AUDITOR GENERAL v. THE BOARD OF SUPERVISORS OF OTTAWA COUNTY.

*Taxes—Account between State and county—Loss upon sale of State tax lands under law of 1869—Interest upon balances —Default of county treasurer.*

1. The loss upon State tax lands sold under the provisions of section 124 of the tax law of 1869 is not a proper charge against a county, said act being *prospective* only in its operation; but where such item has been paid by the county to the State it cannot use it as a set-off against any lawful claim of the State. *Auditor General v. Supervisors of Monroe Co.,* 36 Mich. 70; *Auditor General v. Supervisors of Saginaw Co.,* 62 Id. 579; *Auditor General v. Supervisors of Shiawassee Co.,* 74 Id.—— (42 N. W. Rep. 143).

2. A county is liable for interest on the annual balances due from the county to the State. *Auditor General v. Supervisors of Shiawassee Co.,* 74 Mich.—— (42 N. W. Rep. 143).

3. How. Stat. § 1140, which provides that *all* losses that may be sustained by the default of any county treasurer, in the discharge of the duties imposed upon him by the tax law of 1869, shall be chargeable to the county, covers a default of the treasurer in not paying over the amount due the State on tax sales. *Attorney General v. Supervisors of St. Clair Co.,* 30 Mich. 388.

*Mandamus.*   Submitted June 20, 1889.   Granted *in part*
July 11, 1889.

Relator applied for a *mandamus* to compel the respondents
to apportion among the townships for assessment and collec-
tion a balance claimed to be due the State.   The facts, and
points of counsel *passed* upon by the Court, are stated in the
opinion.

*S. V. R. Trowbridge,* Attorney General (*Moses Taggart,*
of counsel), for relator.

*Walter I. Lillie,* Prosecuting Attorney (*George A. Farr,* of
counsel), for respondents.

Long, J.   Application for *mandamus.*

The relator, as Auditor General of this State, filed a peti-
tion for *mandamus* to compel the board of supervisors of
Ottawa county to apportion among the several towns of that
county the sum of $39,372.51, and to cause the same to be
assessed, collected, and paid over to the State; the Auditor
General claiming that the county of Ottawa is indebted to
the State in that amount.

It is claimed that this amount is made up of various items,
which the county has neglected to pay for several years,
and some portion of said sum being for interest charges, on
balances struck from year to year.

On September 28, 1887, the Auditor General caused to be
served on the clerk of the board of supervisors of that county
the usual notice, showing the amount of taxes apportioned
to said county for the several State purposes for the current
expenses of such year, and also a notice that there should be
levied as a portion of the county taxes, as required by section
22, Act No. 153, Laws of 1885, unless paid prior to October
1, the indebtedness of said county to the State on the first
day of July, 1887, then amounting to $39,372.51.

It appears that in this amount is included certain items charged back to Ottawa county under section 124, Act No. 169, Laws of 1869, as loss upon sales of State tax lands lying in that county, which items, with interest thereon, amount to the sum of $6,447.39.[1]

It was settled in the case of *Auditor General v. Supervisors of Shiawassee Co.*, 74 Mich. ——(42 N. W. Rep. 143), and cases therein cited, that this was not a proper charge by the State against the county, but that where the county had paid such item to the State the county could not use the item so paid as a set-off against any claim which the State might have against the county. The State will not, therefore, be permitted to insist upon payment of this item of the account.

Claim is made by the county that it is not liable to the State for interest charges in account upon annual rests, made on June 30 of each year.

This question was also settled in case of *Auditor General v. Supervisors of Shiawassee Co.*, and we see no reason for changing the rule there laid down. This is a proper item in the account.

In the agreed statement of facts, upon which the present case is heard, it appears that it has been the practice of the Auditor General to charge the county with the amount of lands bid off to the State at the October sales, from the time the bids were reported, and interest was charged on this sum to the county until September 30 following; and that for the last six months of the year ending September 30 the county was credited upon taxes returned 10 per cent. interest, while the amount of interest charged the county was 7 per cent.; also that during the year redemptions would sometimes be made from these sales at the Auditor General's office, and at the county treasurer's office; and that, as to redemptions made at the Auditor General's office, the

---

[1] This sum was made up of six several items charged up to the county from 1869 to 1875, both years inclusive.

State would have the money paid to it, and at the same time the interest charged by the State would cover the whole amount shown by the return of the county treasurer of tax sales; and that, as to redemptions made at the county treasurer's office, the State would charge the county with the amount redeemed at said office at the end of the month, where the money was retained by the county, and the general charge of interest of the Auditor General would cover the full amount returned by the county treasurer for the year.

Upon the hearing here, however, the State waives any claim as to this interest charged upon moneys paid into the Auditor General's office and county treasurer's office during the year prior to the expiration of the time for redemption, and consents that this amount be stricken from the account. This deduction will be made. The account will therefore be adjusted upon that basis, as we think the other charges are proper items of account to be paid by the county.

One other item is in dispute. It appears that on June 10, 1871, the State charged the county of Ottawa with the sum of $3,186.69, for what is called the "Dickinson default," and such sum went into the amount shown due from Ottawa county to the State, and is included, with interest, in the amount claimed. This item grew out of the default of Dickinson, who was county treasurer of Ottawa county, in not paying over to the State, in the year 1870, the amount of moneys due the State on sales.

It appears that, these moneys being unpaid by the county treasurer to the State, the Auditor General in June, 1871, charged this amount, which was $3,000, and interest to June 10, 1871, of $186.69, making the $3,186.69, over to the county, and issued a receipt to the county treasurer for that amount as moneys paid on sales for October, 1870.

It is conceded that no part of these moneys was paid by Dickinson, or that the State ever had any portion of it.

This amount was actually due the State from the sales in October, 1870, in Ottawa county.

It was represented by Dickinson that these moneys had been used by the county for county purposes, and the Auditor General took his receipt for the same, and charged the amount over to the county. It appears that this was not so, and that the county had not used these moneys. The contention of the county is that this loss must fall upon the State.

This question was settled by this Court in *Attorney General v. Supervisors of St. Clair Co.*, 30 Mich. 388. In that case the question was very fully and ably discussed by Mr. Justice COOLEY, and in which the other members of the Court concurred. This case was cited in *Marquette Co. v. Ward*, 50 Mich. 174 (15 N. W. Rep. 70), and the doctrine there enunciated fully sustained and approved.

The question in *Attorney General v. Supervisors of St. Clair Co., supra,* arose under the statute of 1853. That statute has been adopted in the later statutes. Comp. Laws 1857, §§ 378, 924; Laws of 1869, p. 371, § 139; How. Stat. §§ 520, 1140; section 75, Tax Law of 1882.

Section 1140, How. Stat., above cited, provides that all losses that may be sustained by the default of any county treasurer in discharge of the duties imposed by this act shall be chargeable on such county. This is substantially the same as the provision in section 924 of the Compilation of 1857, under which it was held, in *Attorney General v. Supervisors of St. Clair Co.,* that this section seemed intended to cover all possible losses that might arise from the county treasurer's default under the tax law.

We think this is a proper item of account against the county. Very soon after this default occurred, and during the year 1871, this item was charged in the account against the county, and the statement sent that year by the Auditor General to the clerk of the board of supervisors, and was

carried by the Auditor General into the balance against the county on July 1, 1872. This item has been carried along from year to year in these annual balances since that time.

The writ of *mandamus* must be granted, but the items heretofore mentioned must be eliminated from the account.

CHAMPLIN, CAMPBELL, and MORSE, JJ., concurred.

SHERWOOD, C. J. I concur, except as to interest on interest allowed.