## LITTLE v. BOUSFIELD & CO.

1. EVIDENCE—MORTALITY TABLES—DAMAGES.

   The mortality tables are controlling, if offered in evidence, as to the expectancy of life, unless there is testimony tending to show that such expectancy was greater or less than the tables indicate.

2. DAMAGES—DEATH—MORTALITY TABLES.

   Where the plaintiff failed to introduce in evidence the mortality tables to show the expectancy of deceased, who died as a result of personal injuries, but the testimony tended to show the value of his contributions to his wife, the plaintiff, for various periods not exceeding his expectancy as indicated by the tables, and the verdict did not exceed an amount which they would justify, the judgment is not reversible for the omission to introduce them.

3. SAME — NEGLIGENCE — PROBABLE EARNINGS — EXCESSIVE VERDICT.

   Upon the failure of the jury to make reasonable deductions from the earnings which decedent, who was forty-seven

years of age and of infirm health, might have contributed to his wife, a deduction may be made on appeal from the verdict and a judgment be entered for such amount as the court deems not unreasonable, conditioned upon plaintiff's acceptance of such finding.

Error to Bay; Collins, J. Submitted April 12, 1911. (Docket No. 94.) Decided May 8, 1911.

Case by Lulu L. Little as administratrix of the estate of Alvah S. Little, deceased, for the negligent killing of plaintiff's intestate. Judgment for plaintiff. Defendant brings error. Affirmed on condition that plaintiff's judgment be reduced.

*Gillett & Clark,* for appellant.

*De Vere Hall* (*J. H. Patterson,* of counsel), for appellee.

OSTRANDER, C. J. Proceedings upon a former (the second) trial of this cause were reviewed in an opinion found in 154 Mich., at page 369 (117 N. W. 903). The published opinion, in that portion of it which directs the final disposition of the cause, is misleading. After the opinion was filed, a motion was made by defendant for a modification thereof; the motion was granted, and the judgment entry reverses the judgment below and orders a new trial of the cause. Contrary to the statement in the published opinion, this court did not determine the amount for which a judgment in plaintiff's favor would be affirmed. As upon the former trial, plaintiff at the last trial dismissed from consideration all but the fourth count of the declaration. She produced no new witnesses and relied upon substantially the same testimony to show the negligence of defendant, freedom from negligence on the part of plaintiff's intestate, and the effect of the injury. The questions raised by exceptions and by the errors assigned are not materially different from those presented and decided when the cause was first in this court. We have considered them

with especial reference to the additional testimony produced by defendant and the alleged changes in the testimony of plaintiff's witnesses which are pointed out, and conclude that, while the jury might well have found that the negligence of defendant alleged was not proved, still as to all matters passed upon in the former opinion no error is made to appear.

It is contended that, because the tables showing the expectancy of life according to experience were not introduced in evidence, and no other testimony of the probable duration of the life of a normal man of any age was introduced, therefore the jury had no basis for assessing damages. The tables are admissible in evidence whenever the expectancy of life properly comes in controversy. They are controlling, when admitted, in the absence of evidence tending to show that the deceased had a probability of life greater or less than is shown by the tables. *Nelson* v. *Railway Co.*, 104 Mich. 582 (62 N. W. 993); *Davis* v. *Railroad Co.*, 147 Mich. 479 (111 N. W. 76). See, also, *Jones* v. *McMillan*, 129 Mich. 86 (88 N. W. 206); *Damm* v. *Damm*, 109 Mich. 619 (67 N. W. 984, 63 Am. St. Rep. 601); *Belmer* v. *Tanning Co.*, 160 Mich. 669 (125 N. W. 726); *Sax* v. *Railway Co.*, 125 Mich. 252 (84 N. W. 314, 84 Am. St. Rep. 572).

We are not prepared to reverse the judgment because plaintiff did not introduce the tables, or any other testimony, tending to prove the probable duration of life of a person of the age of plaintiff's decedent. But we are of opinion that in determining, in such a case, whether a verdict was excessive, this court would find it excessive if it appeared that the jury, in the absence of any testimony upon the subject, had computed damages upon a basis of longevity which the tables did not substantially support.

The testimony for the plaintiff in the case at bar tended to prove that plaintiff's decedent when he was injured was afflicted with a disease of the inner ear, of which disease, aggravated by the injury he received, he died about a year and four months after he was injured. During this

period he earned some money, served as a juryman, and appeared to have recovered from the effects of his injury.

Upon the subject of the expectancy of life, the court instructed the jury as follows:

"If you should find for the plaintiff, the amount of your verdict must be limited, not only by the probable length of time that Mr. Little would have lived and would have been able to contribute to his wife's support, but also by the time during which his wife may reasonably be expected to live and to receive such support. The amount, if any, must be limited by her expectancy of life, as well as by his.

"If you find it necessary to compute the period of time during which Mr. Little would have lived, which is known as his expectation of life, you must take into consideration the condition of his health, including the fact that it is admitted by the plaintiff that he was afflicted before the accident with a disease known as suppurative inflammation of the ear, and that this disease contributed to his death, and that a man suffering from this disease is not in perfect health, and is more likely to die, and to die sooner, than if he were free from such disease. In considering how much he would have contributed to his wife, if he had lived, you may therefore consider this previous condition of health, and you may also take into consideration the fact that laboring men do not always find steady work, and that there is no certainty that Mr. Little would always have had steady work in the future, even if he had not been injured. You should figure his probable contributions, if any, not necessarily by computing the amount which he would contribute if he worked every day until his death, but may make deductions for the time that he might reasonably lose in the future on account of lack of work, or sickness, or old age, or any other cause. The uncertainty of his health and physical condition are to be considered, as well as the uncertainty of the work at which he was engaged. You should also deduct from the amount of the estimated contributions such sum as is necessary to discount the allowance in a lump sum of contributions which otherwise would have been made at various times in the future. This should be done by computing the present worth of his future contributions."

The jury were thus given proper rules for their guid-

ance. The testimony upon the subject of damages was that of the widow, who said the amount of monthly contributions lost was $30, and that the husband received as wages $1.62½ per day generally, and sometimes received $1.75 per day. The widow was younger than her husband, who was 49 years old when he died.

The attorney for the plaintiff testified as follows:

"I have made a computation of the value of an annuity of $360 a year at the rate of 5 per cent. simple interest. The value of an annuity of $360 a year for 1 year at 5 per cent. simple interest is $342.85; for 2 years is $670.12; for 3 years, $983.16; for 4 years, $1,283.16; for 5 years, $1,571.1 ; for 6 years, $1,848.08; for 7 years, $2,114.70; for 8 y ars, $2,371.89; for 9 years, $2,620.70; for 10 years, $2,860.17; for 11 years, $3,092.43; for 12 years, $3,317.43; for 13 years, $3,535.61; for 14 years, $3,747.37; for 15 years, $3,953.08; for 16 years, $4,143.08; for 17 years, $4,347.68; for 18 years, $4,537.15; for 19 years, $4,721.77; for 20 years, $4,901.77; for 21 years, $5,077.38. I have only taken it for 21 years, because I compute it from the time of the death, rather than from the time of the injury, under this statute."

On cross-examination he further testified:

"My computation depends, first, on Mrs. Little's testimony as to a dollar a day, and is dependent in addition on the uncertain question as to how many years Mr. Little would have lived; that is why the figures vary.

"*A juror:* When you say the value of money, what do you mean, 5 per cent. interest, or compound?

"*A.* No, not compound; simple interest. That is, if $360 was to be paid to Mrs. Little at the end of a year, you would find how much it should be if paid today, by dividing $360 by $1.05; and if it was to be paid at the end of two years, by dividing by $1.10, 5 per cent. being the rate of interest, and then you would add these several quotients for the years you wanted, and that makes the amounts which I have stated.

"*Q.* I believe on the first trial your computation was $4,528. What did the difference represent?

"*A.* The difference represents the fact that in the first computation there was no fuel included, $4. It was on the basis of $26 a month, or one dollar for each laboring

day, as she testified, omitting anything for fuel and light, and this time $4 a month is added for fuel and light."

The expectancy of life of plaintiff's decedent, as appears from the tables, was 21 years plus. The jury returned a verdict for $5,077.38, showing that no deductions whatever were made for sickness, loss of time, infirmities of age, diminished earning capacity, diminished longevity on account of the disease of the ear; showing, too, that they found deceased for 21 years, or until he was 68 years of age, would have contributed to the support of his wife $30 a month out of his wages as a laboring man of about $1.62½ a day, or about $42 a month. It appears that upon the first trial of the cause the widow, upon whose testimony the point depended, testified that the regular wages of her husband were, and for some years had been, $1.50 per day, and estimated his contributions, lost by his death, at $26 per month. The rule laid down by the court for determining the present worth of the lost contributions has often been, and was recently, approved in *Rivers* v. *Electric Co.*, 164 Mich. 696 (128 N. W. 254). We find no reversible error committed upon the trial.

Defendant moved for a new trial upon the ground that the verdict was excessive and was against the weight of evidence. We are of opinion that the motion should have been granted. It is true there was testimony of medical men to the effect that the decedent might have lived out his expectancy of life, notwithstanding his diseased condition; but the weight of the testimony is not so. Nor does the weight of testimony, or human experience, support the conclusion that no deductions should be made from the amounts stated in the computation submitted by counsel. Undoubtedly the necessary inquiry is to be made by the jury. But, when it is evident that the necessary inquiry has not been made, the remedy must be, however reluctantly, applied by the court. *King* v. *Railroad Co.*, 144 Mich. 65 (107 N. W. 868). If it is assumed that, but for the injury, plaintiff's intestate would have lived 18 years longer than he did live, and

that during that period he would have contributed to the support of his wife a sum averaging $22.50 per month, the present value of the contributions at the time of his death would be about $3,403. Such a result would be not unreasonable. A judgment for a larger sum would be, in our opinion, unreasonable. Rather than set aside the judgment and verdict absolutely, we are disposed to permit plaintiff to remit so much as exceeds $3,403, for which sum it will be affirmed, with costs of this court to appellant. Otherwise a new trial will be granted.

BIRD, HOOKER, BLAIR, and STONE, JJ., concurred.