ATTORNEY GENERAL *v.* BRUCE.

1. MANDAMUS — TOWNSHIP SUPERVISOR — TAX ROLLS — DEFEAT OF MANDAMUS PROCEEDINGS—MOOT CASE.

In mandamus proceedings to compel the supervisor of a township to spread upon the tax rolls the sum expended by the State highway commissioner in repairing a State rewarded highway in said township, the supervisor could not deliberately put it out of his power to comply with said order by delivering the roll to the treasurer after the order to show cause was served upon him.

2. HIGHWAYS AND STREETS—STATE ROAD REWARD LAW—REPAIRS TO HIGHWAY—DUTY OF SUPERVISOR TO SPREAD TAX.

The duty of the supervisor of a township to spread upon the rolls a tax to repay to the State the sum expended by the State highway commissioner in repairing a State rewarded highway in said township, which the township failed to repair after being notified so to do, follows as a matter of course the exercise by the State highway commissioner of the power granted him by the statute (1 Comp. Laws 1915, § 4389, as amended by Act No. 356, Pub. Acts 1917), and it is immaterial that the clerk of the board of supervisors failed to certify to said supervisor the action of said board in ordering the tax spread.

3. SAME—STATE HIGHWAY COMMISSIONER'S ACTS NOT REVIEWABLE.

The action of the State highway commissioner, being authorized by statute, is not subject to review by the recalcitrant township, nor may such township stay the spread of the expense upon the tax roll until it be given an opportunity to litigate the charge.

4. MANDAMUS—TAX TO REPAY REPAIR OF STATE REWARDED ROAD—DUTY TO SPREAD.

Mandamus is the proper remedy to compel the supervisor of a township to spread upon the tax rolls the sum expended by the State highway commissioner in repairing a State rewarded highway in said township under the power given him by the statute (1 Comp. Laws

1915, § 4389, as amended by Act No. 356, Pub. Acts 1917), since there are no contractual relations between the State and the township, and the claim is a liquidated one.

5. SAME—PUBLIC OFFICER—DISCRETION—DETERMINATION FINAL—NOT CONFINED TO JUDICIAL ACTS.

The doctrine that where an officer has particular authority to exercise his judgment, after investigating the facts of which he is made judge, his findings of such facts are conclusive, is not confined to judicial and *quasi*-judicial officers.

6. HIGHWAYS AND STREETS—REPAIR OF ROAD—DETERMINATION OF HIGHWAY COMMISSIONER FINAL.

The determination of the State highway commissioner as to the necessity for said highway repairs and also as to the nature and extent of same is final and conclusive, in the absence of fraud, it being the intent of the legislature, under said statute, that he should exercise his judgment and discretion.

7. SAME—CONSTITUTIONAL LAW—STATE LEGISLATURE—POWERS.

Under the broad powers conferred upon it by section 26 of article 8 of the Constitution, the legislature has the power to make the determination of highway officials as to the necessity for doing work final and not subject to judicial review, in the absence of fraud or its equivalent.

8. CONSTITUTIONAL LAW—RETROSPECTIVE STATUTES—REMEDIES.

The legislature may give a retrospective effect to statutes having reference to matters of remedy or procedure.

9. HIGHWAYS AND STREETS—ENFORCING DUTY TO REPAIR—RETROSPECTIVE STATUTES.

Where no greater duty was imposed upon a township in regard to keeping a State rewarded highway in repair by amendments to the statute under which the township applied for and obtained the State reward than was provided therein, it cannot be said that said amendatory statutes are retrospective because they provided additional methods of enforcing that duty.

10. SAME—GENERAL HIGHWAY LAW—TOWNSHIPS—RESTRICTION OF AMOUNT FOR REPAIRS—CONFLICT OF STATUTES.

The claim of the township that said statute conflicts with and practically repeals the provision of the State highway

law restricting townships to a tax of one-half of one per cent. for repairs and maintenance cannot be sustained, since it provides for a tax to meet a specific obligation, the same as though it were a judgment against the township, and, the township having availed itself of the benefits, is bound by its terms.

11. SAME—CONSTITUTIONAL LAW—LOCAL SELF-GOVERNMENT.
Said statute is not in conflict with section 28 of article 8 of the Constitution, reserving to cities, villages, and townships the reasonable control of their streets, alleys, and public places, since the improvement or repair of a road is not one of merely local concern, but is one in which the entire State is interested.

12. CONSTITUTIONAL LAW—SPECIFIC PROVISIONS—STATUTES.
Where a statute is claimed to be unconstitutional, the specific provisions of the Constitution claimed to be vitiated should be pointed out.

Certiorari to Ingham; Wiest (Howard), J. Submitted February 15, 1921. (Calendar No. 29,552.) Decided March 30, 1921.

Mandamus by Alex. J. Groesbeck, attorney general, to compel Helmer Bruce, supervisor of Bark River township, to spread and levy a tax. From an order granting the writ, defendant brings certiorari. Affirmed.

*Ryall & Frost* (*Walter S. Foster*, of counsel), for appellant.

*Merlin Wiley*, Attorney General (*Leland W. Carr*, of counsel), for appellee.

STONE, J. This case has been brought here by certiorari to review a proceeding by mandamus in the circuit court for the county of Ingham, upon the petition of the attorney general, to compel the defendant, as supervisor of Bark River township, Delta county, to spread and levy a tax of $9,315.27 for the purpose

of enabling the township to pay into the treasury of the State the sum expended by the State in repairing a State rewarded highway in the township. It appears that the road was constructed by the township, and reward was paid thereon, during the years 1909 to 1912, all proceedings being taken after Act No. 283 of the Public Acts of 1909 (1 Comp. Laws 1915, § 4287 *et seq.*) went into effect. At the time when the road was built by the township the general statute required the highway commissioner to keep all township roads and bridges in reasonable repair, and in condition reasonably safe and fit for public travel. Section 12 of chapter 5 (1 Comp. Laws 1915, § 4389) of the said highway law further emphasized the duty in so far as the State rewarded roads were concerned, by granting authority to the State highway commissioner to refuse further road reward to any township or county that did not keep its State rewarded roads in proper repair.

In 1913, by Act No. 355 of the Public Acts, said section 12 of chapter 5 was amended so as to provide that if the repairs were not made by the township or the county within a reasonable time, after being ordered by the State highway commissioner, he should make such repairs and cause the same to be paid out of reward money earned by the township or county. The section was again amended by Act No. 75 of the Public Acts of 1915, which added the further provision that if no reward was due to the county, district, or township, the State highway commissioner should render his bill to the proper township authorities, which bill was required to be paid, and the supervisor was directed to include the amount in the next tax roll of the township. In 1917 the legislature again amended the section by Act No. 356, adding provisions with reference to the organization of a system of maintenance. The act as so amended was in effect at the

time the action of the State highway commissioner herein involved was taken. It is set forth in the petition for the writ of mandamus, and not denied by the answer, that the State highway commissioner examined the road in Bark River township and found and determined that such road was not in a condition of proper repair, and was not safe and suitable for public travel thereon. Accordingly, on September 7, 1917, pursuant to said section 12, the said commissioner made and served on the township board and highway commissioner of the township a formal order, reciting that the road was not in a condition of proper repair, and specifying what repairs should be made by the township. A period of 60 days was given by the order in which to make these repairs. It is claimed in the answer of defendant that such time was not sufficient; but it is not claimed that the township officials made any effort or attempt whatever to repair the road, or that they sought to do so after the expiration of the 60-day period. It affirmatively appears that the State highway commissioner did not take any further action until the summer of 1918. It being obvious that the township authorities did not intend to comply with the order of the previous September, the State highway commissioner entered into a contract with the Delta Construction Company of Escanaba for the doing of the work that had been determined to be necessary to put the road in proper condition for the traffic using it. The State paid the contractor for the actual repair of the road the sum of $9,315.27. Such payment is not disputed. It is also admitted by the answer that payment of the bill was refused by the township officers, and that the township did not have sufficient money on hand to make the payment.

At its October session of 1919 the board of supervisors of Delta county, on presentation to it of the situation, ordered the supervisor of Bark River town-

ship to include the amount of the State's claim in the tax for his township. The supervisor, however, did not comply with the order and direction of the board, claiming before the board, as appears by the allegations of the answer, that he was not legally required to do so. At its session of 1920 the board of supervisors substantially repeated its action of the preceding year, and again ordered the tax spread, which order was not complied with. The mandamus proceeding was begun November 24, 1920, to compel the supervisor to place the tax on his roll, in order that the amount due the State might be collected and paid into the State treasury. An order to show cause on November 30, 1920, why a peremptory writ of mandamus should not be issued was made and duly served. The case was heard in the court below on the petition and answer, and for the reasons set forth in the opinion of the learned circuit judge, which appears in the record, it was ordered on December 18, 1920, that the writ of mandamus should issue. From this determination and order defendant has brought the case to this court on a writ of certiorari, alleging in his petition therefor many errors which are discussed by counsel.

1. By their brief in this court, counsel for defendant first urge that the case is a moot case, and that the petition should be dismissed, since no writ can now be directed against the supervisor with which he could comply, or which would authorize him to place this assessment on the 1920 tax roll, as that roll is out of his possession, and he has no further jurisdiction over it, and his term of office will expire before the 1921 tax roll is prepared. Counsel urge that the court will not do a vain thing or grant a writ which cannot be effective, and the collection of authorities in *Anway* v. *Railway Co.*, 211 Mich. 592-622, is cited.

Counsel for the plaintiff claim that this question

is not properly before the court; that the original answer did not claim that the roll had been turned over, but merely asserted that it would be the duty of the defendant to so deliver his roll. Subsequently, and on December 9, 1920, defendant appears to have filed (without leave of the court and without serving a copy on counsel for plaintiff) a so-called supplemental answer in which he claimed that he had turned over his roll to the treasurer of the township. In his opinion the circuit judge referring to this matter, and treating the question as though it were properly raised, said:

"Counsel for respondent calls attention to the case of *Ferton* v. *Feller,* 33 Mich. 199, as authority in support of the contention that the supervisor may not alter the tax roll after it has passed from his hands to the treasurer. It may be conceded that the supervisor may not, on his own motion, recall the tax roll after delivery to the treasurer and alter the same; but it does not follow that, with an order to show cause why he should not be ordered to include the tax, served upon him at a time when the roll was still in his hands, and subject to the inclusion of this tax, he can make this proceeding a moot case by deliberately not including the tax, and passing the roll to the treasurer. Respondent has taken the language of the statute as mandatory, when it is directory only. *Barnes* v. *Board of Sup'rs of Wayne Co.,* 194 Mich. 540, 550. The case has not become a moot one by reason of such action by respondent in the face of the proceeding pending against him in this court to compel him to do the very thing he now says he has by his act cut himself off from doing. It would bring reproach upon the law to hold that the supervisor, after being ordered by the court to show cause why he should not spread a tax, may not spread the tax, and may defeat the proceeding by sending the tax roll to the treasurer. He should have held the tax roll until a determination herein, and he could have done so under the law; and his claim that he had complied with the letter of the law goes for naught when it appears

that his haste was wholly unnecessary, and that the letter of the law, as well as the spirit thereof, would have been met, and much better served by respect for this proceeding, and in waiting determination herein. The question raised by respondent was before the court in the case of *State, ex rel. Evers,* v. *Byren,* 32 Wash. 264 (73 Pac. 394), and it was held that the surrender of the roll did not defeat the power of the court to order the tax spread."

We call attention to the lengthy excerpt from the Washington case, given by the circuit judge in his opinion. We held in the *Barnes Case* that such provisions as to time of delivery of roll were directory merely. If defendant, after the time of showing cause on November 30th, deliberately put the roll out of his control, he did so at his peril. The courts will not permit their jurisdiction to be trifled with in this manner. Material delay in the preparation of rolls is frequently necessary, and is practiced in cases of litigation. *Attorney General* v. *Midland County Sup'rs,* 178 Mich. 513. See, also, *State, ex rel. Taggart,* v. *Holcomb,* 81 Kan. 879 (106 Pac. 1030, 28 L. R. A. [N. S.] 251). We agree with the circuit judge that there is no merit in this claim.

2. The next point urged by defendant is that the board of supervisors had no jurisdiction in the matter, and that plaintiff is not in position to ask for a writ of mandamus requiring the levying of this tax until through some legal process the township has had its day in court, and the claim in question has been paid by the township. Touching these matters the circuit judge in his opinion said:

"Respondent contends that the board of supervisors for Delta county had no duty to perform with respect to the tax in question; and if action by such board was necessary, the clerk of the board of supervisors did not certify the direction of the board to the township. It may be doubtful whether this particular tax must be certified to the board of supervisors by the town-

ship clerk, because the law provides that the supervisor shall include the amount in the next regular tax roll, and there may be some question whether the amount and purpose of the tax should be certified by the township clerk to the board of supervisors, under other provisions of law, and then come back under direction from the board, but this does not avail respondent at all. It may be that action by the board of supervisors was not necessary, or it may be held that such action was necessary, and not at all affect the duty of respondent in the premises. If direction by the board of supervisors was necessary, such action was had, and while it may be somewhat perfunctory in nature, because under the law the tax partakes wholly of a township matter, it is no excuse to say that the clerk of the board of supervisors failed to certify the same, and in the same breath urge that the board of supervisors could not take action at all. Both positions are answered, however, by the law making it the duty of the township supervisor to take notice of this township obligation, and to spread the tax, regardless of the failure of the clerk of the board of supervisors to certify the same to him. It is claimed that, if the board of supervisors may order the tax spread upon the township roll, the board cannot act at all until all questions of difference between the township and the State highway commissioner have been settled, and the right of the township to litigate the legality of the claim has been afforded; and it is urged that a bill for such repairs rendered to the township is required to be paid by such township in advance of the levying of a tax therefor. Must the bill be presented to the township, and the right to contest the need of repairs, and the expense thereof be given to the township before collection can be enforced by tax levy? This is undoubtedly true of private claims, but does not hold good under the statute creating the liability and affording the remedy for repairing a State rewarded road. The action of the State highway commissioner, being authorized by statute, is not subject to review by a recalcitrant township, neither may such township stay the spread of the expense upon the tax roll, until it be given an opportunity to litigate the charge. The law prescribes

the power of the commissioner, and the duty of the township supervisor; and the power of the commissioner when exercised makes the duty of the supervisor follow as a matter of course."

We think that in the above excerpt the second point urged is fully answered.

3. It is next urged by defendant that mandamus is not the proper proceeding, and it is said that mandamus will not be used to enforce mere contractual rights where there is an adequate remedy at law, and the following cases are cited: *Township of Ross* v. *Railway Co.*, 165 Mich. 28; *Hartz* v. *Wayne Circuit Judge*, 164 Mich. 231; *Board of Sup'rs of Arenac Co.* v. *Board of Sup'rs of Iosco Co.*, 144 Mich. 52, 158 Mich. 344.

It should be borne in mind, as stated by the circuit judge, that the relations between the township and the State arising under the road reward law are in no sense contractual. We do not think that the cases above cited are controlling of the instant case. Here the claim is a liquidated one. The statute makes it the duty of the State highway commissioner, on the failure of the township authorities to act, to proceed to put the road in proper condition. This is a ministerial duty, and the resulting duties on the part of the township authorities, with reference to the payment of the cost of the work are also ministerial. The amount to be paid by the township authorities, and to be raised by taxation, is fixed. If a judgment in assumpsit were obtained it would add nothing. The judgment would be no more liquidated than is the claim. The case of *Pape* v. *Township of Benton*, 140 Mich. 165, seems to be authority in support of the plaintiff's claim upon this question. There the highway commissioner had purchased road machinery under Act No. 173, Pub. Acts 1897, an act intended to permit such purchases, and which provided the method

that should be followed in raising the money by taxation. Suit in assumpsit was brought against the township by the seller of such machinery. The trial court held that assumpsit would not lie and that mandamus was the proper remedy, and that holding was here affirmed. Mr. Justice MCALVAY, speaking for the court, said:

"No proceeding is necessary to determine the amount of such indebtedness. That amount is fixed by the proper township officers, who certify to the board of supervisors. The contract fixes the purchase price. Payment can be made only through official channels. Everything is a matter of record. At no time can the balance due be a matter of doubt. The township is not primarily liable. No contract relations exist between the seller of the road machines and the township."

The following cases are also pertinent: *Mackenzie* v. *Baraga Township Treasurer*, 39 Mich. 554; *Just* v. *Wise Township*, 42 Mich. 573; *Township of Hart* v. *County of Oceana*, 44 Mich. 417; *County of Oceana* v. *Hart Township*, 48 Mich. 319; *Auditor General* v. *Supervisors*, 76 Mich. 295; *Auditor General* v. *Board of Sup'rs of Bay Co.*, 106 Mich. 662; *Smith* v. *Jones*, 136 Mich. 532.

In our opinion mandamus is the proper remedy here.

4. It is next urged by defendant that he has not had his day in court, and an opportunity to present his defense. It is claimed that it cannot be said that the legislature intended to give the State highway commissioner the absolute right to arbitrarily decide when such expenditures should be made without any limit as to the amount, or to make his mere statement, both as to the necessity and the amount of the expenditure, conclusive. Counsel cite *Attorney General* v. *Board of Sup'rs of Bay Co.*, 106 Mich. 662, 680; *Mixer* v. *Board of Sup'rs of Manistee Co.*, 26 Mich. 422; *Endriss* v. *County of Chippewa*, 43 Mich. 317.

Upon this branch of the case the circuit judge in his opinion said:

"Respondent seeks to raise issues of fact upon the necessity for the repairs made by the State highway commissioner, and asserts that the action taken by the commissioner was arbitrary, and the expense incurred excessive. No such issue of fact can now be raised; the law provides for none, and the purpose of the law negatives such issues. The law gave the township an opportunity to make the repairs, and upon its failure to do so, vested power in the State highway commissioner, and if the determination of the commissioner was ever open to question at all, it could only be for fraud, or for exceeding his authority, and not for a review of his judgment. The township was ordered by proper authority to make the repairs and neglected to comply with the order, and did not then contest the need of, and the extent and nature of the repairs as a fraudulent determination, and does not do so now, and it never could bring the judgment of the State highway commissioner before a court for review. The law provides power for keeping a rewarded road in repair, and if the township pays no attention to an order of the State highway commissioner, the necessity therefor, and the cost thereof, are not subjects to be litigated between the commissioner and the township, unless fraud is alleged; for the commissioner acts as an administrative officer clothed with full power of determination, and his acts are not open to review in any court."

The circuit judge quoted the statute as amended. It has been repeatedly held by this court that where an officer has particular authority to exercise his judgment, after investigating the facts of which he is made judge, his findings of such facts are conclusive. And this doctrine, in its application, is not confined to judicial and *quasi*-judicial officers. For a collection of authorities on this subject see *Belknap* v. *Township of Benton*, 169 Mich. 58, 64.

It seems to be the claim of appellant that the determination of the State highway commissioner is sub-

ject to review, and that in consequence if the commissioner erred in judgment the township is relieved from all responsibility and the State is without remedy. We invite attention to the language of the statute. By its terms the State highway commissioner was empowered to take the action which he did take, and his determination as to the matter of necessity was final, and we think the circuit judge was correct in his determination that no triable issue of fact was presented. It seems to us clear that the legislature intended that the State highway commissioner should exercise his judgment and discretion as to whether a State rewarded road needs to be repaired or not, and also as to the nature and extent of the repairs necessary to put it in proper condition. It will be noted that no method of appeal is provided for, to review the decision of the State highway commissioner to the effect that repairs are necessary and must be made in a certain manner under the statute. The legislature recognized that the matter is administrative. A similar situation is found under the drain law, where it is provided that in case of an appeal to the State highway commissioner, to determine a dispute arising between drain commissioners in the construction of an intercounty drain, the finding of the State commissioner is conclusive. Necessarily, matters of this kind, being administrative, must be left to the judgment and discretion of the officers who are charged with the performance of the duty involved; and in the absence of fraud or its equivalent such determination must be final. If the rule is otherwise, highway authorities who are charged with the duty of repairing a road must determine, at their peril, when the necessity arises and what repairs shall be made. If their determination in these respects is to be subject to review by a court, a situation is presented at variance with the entire theory of the highway law. The proposition here raised affects

not only the general highway law itself and the duties of all highway officials thereunder, but also the trunk lines and Federal aided road acts. Under the former statute (Act No. 19, Pub. Acts 1919), the final determination with respect to the improvement and maintenance of a trunk line road is vested in the State highway commissioner. The duty of maintaining such roads is placed on him, and with it is conferred the right to determine when repairs shall be made and what repairs are necessary. Townships and counties are required to raise their share of the cost of such work. If a township or county, or any taxpayer thereof, may insist on a review in a judicial proceeding as to whether the work deemed necessary by the State highway commissioner was in fact necessary, or whether any repairs at all were called for, the act is for all practical purposes nullified.

That the legislature has the power to make the determination of highway officials as to the necessity for doing the work final, and not subject to judicial review in the absence of fraud or its equivalent, cannot, we think, be questioned. We invite attention to section 26 of article 8 of the Constitution, which invests the legislature with very broad powers in this regard. The general rule is stated in 13 R. C. L. at page 82, as follows:

"The propriety and necessity of improving streets and sidewalks, and the character and extent of the work to be done, are matters resting in the discretion of the public authorities to whom the decision of those questions is committed by law, and the courts will not interfere with the exercise of such discretion, except where the power is exceeded, or fraud is charged and shown to exist, or where there has been a manifest invasion of private rights."

See cases cited in notes.

So in 37 Cyc. page 222, it is said:

213—Mich.—35.

"The method or plan of work is in the discretion of the road officers within the restrictions of law, and subject to the rights of abutting owners."

A decision strongly in point is *Reuter* v. *Contracting Co.*, 143 Ky. 557 (136 S. W. 1028, Ann. Cas. 1912D, 265). That was an action brought by the contractor who had done the work, the purpose being to enforce a lien on the property in accordance with the Kentucky statute. It was urged, by way of defense, that the work should not have been done. The court said:

. "Appellant's final contention that the work done by appellee under his contract with the common council was unnecessary, is a matter with which neither the circuit court nor this court is concerned. The complaint constitutes no defense to the action. The question of whether the streets or sidewalks of a city shall be repaired, changed or improved, is a matter that addresses itself solely to the discretion of the common council of the city; as is the further question as to what the character and extent of the work should be; and the courts will not interfere with the exercise of such discretion"; citing cases.

The case of *Auditor General* v. *Board of Sup'rs of Bay Co.*, *supra*, cited by defendant, we think supports the contention of the plaintiff. It was a mandamus proceeding, and involved, among other things, the right of the State to recover for money expended in maintaining the State militia while engaged in duty in Bay county. It was contended on behalf of the respondent board that the county could not be charged without giving an opportunity to be heard,—substantially the same claim as is made in the instant case. At page 680 this court said:

"The law fixes the compensation, and provides for payment by the State, upon allowance by the proper State officers. When paid, the liability of the county does not depend on the opinion of the board of supervisors, either as to the sufficiency of the requisition,

the nature of the emergency, or the amount to be paid by the State. All of these things are now definitely fixed by law. It is a charge on behalf of the State, and can be disputed only in the courts, if thought illegal or excessive."

Counsel for defendant lay stress upon the last sentence. An examination of the entire opinion shows that the court had in mind the contesting of liability in a case where the bill rendered was in excess of the money actually expended, or where the action taken was unlawful because of fraud or its equivalent. In our opinion the assertions in the answer that the action of the State highway commissioner was arbitrary, uncalled for, etc., present no issue of fact. Similar expressions were used in *Barnes* v. *Board of Sup'rs of Wayne Co., supra.* We call attention to the language of this court upon the subject. So in the instant case, we think, it must be said that the fact that the judgment of the State highway commissioner differed from that of the defendant, with reference to the extent of the repairs necessary to put the road in proper condition, does not render the determination of the commissioner subject to review.

5. It is next claimed by appellant that the several amendments of the statute are not retrospective, and *Board of Sup'rs of Arenac Co.* v. *Board of Sup'rs of Iosco Co.,* 158 Mich. 344, and *Davis* v. *Railroad Co.,* 147 Mich. 479, are cited. Upon this question the circuit judge said:

"The respondent claims that the obligation of the township is to be determined in accordance with section 12 of chapter 5, Act No. 283, Public Acts of 1909, and not by any amendments thereto."

After referring in detail to the several amendments he said:

"The point is made that the rights, duties and obligations of the township, and the remedy to compel per-

formance of such duties and obligation must be measured and determined by the statute in force when the township applied for, and obtained the State reward, and that subsequent amendments to the statute cannot be invoked by the State, for, to do so would violate the contractual relations between the township and the State, arising out of the tender of, and under the provisions of the statute, and acceptance by the township.

"The relations between the township and the State, arising under the road reward law, are in no sense contractual. *Board of Sup'rs of Saginaw Co.* v. *Hubinger,* 137 Mich. 72. The township is but a subdivision of the State, and is incapable of establishing contractual relations with the State, under the road reward law, and is at all times amenable to the laws of the State.

"The application for, and receipt of road reward money by the township, was under general law, and cannot partake of the nature of a contract. The law placed the obligation upon the township to keep its road upon which it has been paid reward money and which becomes thereby impressed with State supervision, in repair, and this obligation comes to the township by law, and not by contract to do so, and the obligation imposed by law has not been changed by subsequent legislation, and even if it had been changed by law, it would have to be obeyed by the township. The means of enforcing obedience has been amplified, and of this the township cannot complain, and could not complain successfully even if its relations with the State, under the statute should be held to be contractual in nature. *C. H. Little Co.* v. *L. P. Hazen Co.,* 185 Mich. 316; *Heineman* v. *Schloss,* 83 Mich. 153."

The amendments affect the remedy only. No greater duty with respect to roads was imposed on the township or the township authorities, under these amendments, than was imposed under the law in its original form. The only change made had to do entirely with the manner of enforcing that duty on behalf of the public, or to provide an additional method for such enforcement. There is no legal objection preventing

the legislature from giving a retrospective effect to statutes having reference to matters of remedy or procedure. *Township of Clearwater* v. *Board of Sup'rs of Kalkaska Co.*, 187 Mich. 516, 524. There is no merit in this claim of appellant.

6. The next claim of appellant is that the highway law attempts to repeal the general law with reference to the raising of money by townships for road purposes. And it is said that any construction making this law retrospective would operate to modify and practically repeal those provisions of the State highway law restricting townships to a tax of one-half of one per cent. for repairs and maintenance, and would, in effect, place the matter entirely within the discretion of the State highway commissioner. The defendant cites *People* v. *Hanrahan*, 75 Mich. 611 (4 L. R. A. 751), and *Tillotson* v. *City of Saginaw*, 94 Mich. 240. We are unable to see wherein either of the cited cases sustains appellant's claim. The statute we are considering does not conflict with the general statute. It provides for the spreading of a sum or tax to meet an obligation of the township, the same as though it were a judgment against the township. The statute we are dealing with is a substantive and independent enactment. The township having availed itself of its provisions, it is bound by its terms dealing with the levy of the amount due the State. *Menominee Water Co.* v. *City of Menominee,* 124 Mich. 386, 395.

7. Finally it is urged by appellant that plaintiff's construction of said section 12 makes it unconstitutional, and the case of *Board of Sup'rs of Arenac Co.* v. *Board of Sup'rs of Iosco Co., supra,* is cited, as well as section 28 of article 8 of the Constitution. Neither in his answer nor in the petition for certiorari does defendant point out any specific provisions of the Constitution claimed to be vitiated. Upon the question of local self-government we shall refer to the language

of Mr. Justice STEERE in *Loomis* v. *Rogers,* 197 Mich. 265, at page 276 *et seq.,* and his quotation from 13 R. C. L. p. 159, and the following cases cited by the attorney general in his brief in this case: *Williams* v. *Eggleston,* 170 U. S. 304 (18 Sup. Ct. 617) ; *Attorney General* v. *McClear,* 146 Mich. 45; *Cilley* v. *Sullivan,* 187 Mich. 447; *Bulkeley* v. *Williams,* 68 Conn. 131 (35 Atl. 24, 421, 48 L. R. A. 465).

We conclude this lengthy consideration of this case by quoting with approval the following language of the attorney general in his brief:

"The matter of the improvement or the repair of a road is not one of merely local concern. All of the highway legislation now on the statute books is based on the theory that the entire State is interested. The reward law itself is no exception.

"We are not confronted here with a case in which an attempt is made by the legislature to authorize action by one who is not representative in any way of the municipality. The State highway commissioner is an officer of the State, represents all and each part of it, including the township of Bark River. It is competent for the legislature to empower and require him to act in the manner provided for in the statute here involved, just as under the assessment district road law, he may bind a township, or a county, or an assessment district, by the issuance of bonds, the preparation of the assessment rolls and other matters of procedure provided for in that act."

The judgment of the circuit court is affirmed.

STEERE, C. J., and MOORE, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred. WIEST, J., did not sit.